BENTON, Circuit Judge.
Geoffrey Scott Gaffney conditionally pled guilty to one count of possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). He appeals the denial of his motion to suppress evidence seized from his car. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.
I.
Officer Albert Bovy was stopped at a red light. Directly in front of him, he saw Gaffney’s vehicle approaching the intersection from the opposite direction. As the light changed to green, the vehicle, without slowing, moved through the intersection. The officer made a u-turn to follow it. Gaffney immediately braked hard and made a right turn. The officer turned on his lights. The vehicle stopped.
Officer Bovy approached and said he estimated Gaffney was driving 50 to 55 mph in a 35 mph zone. Gaffney replied, “I thought I was only going in the 40s.” While he was looking for an insurance card, dispatch told the officer that Gaffney had a previous narcotics history and was still involved in illegal narcotics. Returning to the vehicle, the officer noticed Gaffney appeared nervous with beads of sweat on his forehead, a shaky voice and hands, and heavy breathing. The officer asked if he had any drugs or weapons in the vehicle. Gaffney answered “no” but declined permission to search his vehicle. The officer ordered him to exit the vehicle to prepare for a dog sniff (the officer had the dog in his car). Conducting a pat-down search, the officer detected a long round object with a bulb on the end. He asked Gaffney about it. Gaffney said nothing was in his pocket. The object was a meth pipe. The officer arrested Gaffney and had the vehicle towed. An inventory search uncovered two large Ziploc bags with four pounds of ice meth.
Gaffney moved to suppress any evidence from the traffic stop, challenging both the *868 lawfulness of the stop and the pat-down search. At the suppression hearing, Officer Bovy testified he received training in identifying speed eleven years earlier. He typically did not “do much in the way of speed violations,” and did not remember if he had “ever” turned on his in-car radar unit. He said his estimate of 50-55 mph was based on his general experience with traffic stops and his familiarity with the area. He did not know the distance the car traveléd from when it first appeared until it passed him. Gaffney presented evidence that his vehicle traveled about 473 feet in nine seconds, an average speed of 35.8 miles per hour.[1]
The district court[2] denied the motion. Gaffney entered a conditional guilty plea, preserving the right to appeal both issues.
II.
“In an appeal from a district court’s denial of a motion to suppress evidence, this court reviews factual findings for clear error, and questions of constitutional law de novo.” United States v. Gordon, 741 F.3d 872, 875 (8th Cir.2013). “We may affirm the denial of a motion to suppress on any grounds supported by the record.” United States v. Allen, 705 F.3d 367, 369 (8th Cir.2013).
A.
Gaffney argues Officer Bovy had neither reasonable suspicion nor probable cause for a traffic stop. “[T]o justify [a traffic stop], officers need only ‘reasonable . suspicion.’ ” Heien v. North Carolina, — U.S.-, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014). Reasonable suspicion exists when an officer has a “particularized and objective basis for suspecting the particular person stopped of breaking the law.” Id. (internal quotation marks omitted). “[T]he ultimate touchstone of the Fourth Amendment is ‘reasonableness.’ ” Id. (some internal quotation marks omitted), quoting Riley v. California,- U.S. --, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014). “The determination of whether ... reasonable suspicion existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time.” United States v. Hollins, 685 F.3d 703, 706 (8th Cir.2012) (internal quotation marks omitted). “Even an officer’s incomplete initial observations may give reasonable suspicion for a traffic stop.” United States v. Givens, 763 F.3d 987, 989 (8th Cir.2014) (internal quotation marks omitted). “Mistakes of law or fact, if objectively reasonable, may still justify a valid stop.” Hollins, 685 F.3d at 706.
This court has not resolved whether an officer’s visual estimate of speed alone can furnish either probable cause or reasonable suspicion to stop a vehicle. This court has held that a “helicopter unit’s independent, continued observation of [a] speeding [vehicle] is enough alone to justify [a] stop of the vehicle.” Gordon, 741 F.3d at 876. The Tenth Circuit has observed, “It’s long been the case that an officer’s visual estimation can supply probable cause to support a traffic stop for speeding in appropriate circumstances.” United States v. Ludwig, 641 F.3d 1243, 1247 (10th Cir.2011). In that case, the district court- found credible the trooper’s visual estimate, noting his good view to .gauge the approaching vehicle, the clear day, the trooper’s 15 years’ experience as a highway patrolman watching cars and esti *869 mating speeds, and the lack of reasons to discredit the speed estimate. “In these circumstances, the district court’s factual finding about the reliability of the trooper’s visual estimation remains untouched, must be affirmed, itself sufficient to support the traffic stop.” Id. at 1247-48.
The Fourth Circuit addressed an officer’s visual estimate that a defendant was over the posted.speed limit by only five miles per hour.
[T]he Fourth Amendment does not allow, and the case law does not support, blanket approval for the proposition that an officer’s visual speed estimate, in and of itself, will always suffice as a basis for probable cause to initiate a traffic stop. Instead, for the purposes of the Fourth Amendment, the question remains one of reasonableness. Critically, and as further explained below, the reasonableness of an officer’s visual speed estimate depends, in the first instance, on whether a vehicle’s speed is estimated to be in significant excess or slight excess of the legal speed limit. If slight, then additional indicia of reliability are necessary to support the reasonableness of the officer’s visual estimate.
United States v. Sowards, 690 F.3d 583, 591 (4th Cir.2012). That court found “at a minimum, there must be sufficient indicia of reliability for a court to credit as reasonable an officer’s visual estimate of speed.” Id. In another case, the Fourth Circuit emphasized that “the probable cause inquiry is — as always — reasonableness, and the analysis remains whether the ‘totality of circumstances’ established the ‘reasonableness of the officer’s visual speed estimate.’ ” United States v. Mubdi, 691 F.3d 334, 339 (4th Cir.2012) (finding that the totality of circumstances supports the stop when two officers each independently determined, by visual observation, that the defendant was exceeding the speed by 8 to 10 mph) (quoting Sowards, 690 F.3d at 592-93), vacated on other grounds in, — U.S.-, 133 S.Ct. 2851, 186 L.Ed.2d 902 (2013).
In this case, the district court found that Officer Bovy “only rarely issues speeding citations,” was “unsure whether he has actually ever turned on his in-car radar,” “his experience with traffic stops is unrelated to speeding violations,” and he “was unable to even provide an estimated distance that Defendant’s vehicle traveled.” United States v. Gaffney, 2014 WL 794568, at *4 (N.D.Iowa, February 27, 2014). Unlike Ludwig, the district court specifically said it did “not place a great deal of confidence in Officer Bovy’s estimation of the speed of the vehicle.” Id. However, relying on dash-camera video and the measurement by the defense investigator, the district court found “the totality of the circumstances establishes the reasonableness of Officer Bovy’s belief that Defendant was speeding as he approached the intersection.” Id. at *5. The court noted: “Because this was an average speed, Defendant likely traveled faster than 35.8 miles per hour at some point or points over the course of the nine seconds.” Id.
Although the district court lacked confidence in the officer’s estimate, the issue is not whether the evidence supports his belief that Gaffney was traveling at 50-55 mph. “[Searches and seizures based on mistakes of fact can be reasonable.” Heien, 135 S.Ct. at 536. The issue is whether the totality of the circumstances at the time of the stop supports the reasonableness of the officer’s belief that Gaffney was speeding at all. See United States v. $45,000 in U.S. Currency, 749 F.3d 709, 715 (8th Cir.2014) (“Any traffic violation, however minor, provides probable cause for a traffic stop.”).
Officer Bovy was familiar with the area, thought Gaffney was speeding, and Gaff-ney “braked hard” immediately after Bovy *870 u-turned to follow him. Based on the totality of these facts — corroborated by Gaff-ney’s admission and the investigator’s measurement — the district court correctly concluded that Officer Bovy’s belief that Gaffney was speeding was objectively reasonable.
B.
Gaffney challenges the pat-down search arguing that Officer Bovy had no reason to suspect he was armed and dangerous. “Officers may conduct a protective pat-down search for weapons during a valid stop ... when they have objectively reasonable suspicion that a person with whom' they are dealing might be armed and presently dangerous and criminal activity might be afoot.” United States v. Preston, 685 F.3d 685, 689 (8th Cir.2012) (internal quotation marks omitted). “In determining whether reasonable suspicion exists, we consider the totality of the circumstances in light of the officers’ experience and specialized training.” Id. “[A] pat-down is permissible if a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.” Id. (internal quotation marks omitted).
The stop occurred late at night in a high-crime area. United States v. Roggeman, 279 F.3d 573, 578 (8th Cir.2002) (“Trooper Moore was alone, he stopped Roggeman late at night, and the scene of the stop was poorly lit. These facts go to officer safety.”). Gaffney was abnormally nervous. See United States v. Hanlon, 401 F.3d 926, 930 (8th Cir.2005) (“Hanlon’s extreme nervousness and failure to make eye contact with Halverson bolstered Hal-verson’s reasonable suspicion that Hanlon was armed and dangerous.”). Officer Bovy was told that he had a narcotics conviction and was still involved in the narcotics trade. “[I]t is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction.” United States v. Bustos-Torres, 396 F.3d 935, 943 (8th Cir.2005). Officer Bovy had reasonable suspicion that Gaffney could be armed and dangerous and criminal activity was afoot. The district court did not err in upholding the pat-down search.
The judgment is affirmed.
******

. The video from the officer’s dash-camera shows Gaffney’s headlights coming into view directly in front of him and passing him nine seconds later. A defense investigator estimated the location of Gaffney’s vehicle when it first appeared. The distance between this location and Bovy’s location is 473 feet.

. The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.