# IN THE COURT OF APPEALS OF IOWA

No. 16-0721
Filed November 8, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ZACHARY LYNN FLIPPO,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, James D. Coil, District Associate Judge.

        Zachary Flippo appeals the judgment and sentence entered following his conviction for possession of marijuana. **REVERSED AND REMANDED FOR NEW TRIAL.**

        Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, and Sarah Keely, Student Legal Intern, for appellee.

        Heard by Doyle, P.J., Tabor, J., and Goodhue, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**DOYLE, Presiding Judge.**

Zachary Flippo appeals the judgment and sentence entered following his conviction for possession of marijuana. Flippo challenges the denial of his motion to suppress evidence obtained during a traffic stop of a car in which he was a passenger, arguing the prolonging of the stop to allow a sniff by a drug dog amounted to an unconstitutional seizure.

**I. Background Facts and Proceedings.**

Waterloo Police K-9 Officer Albert Bovy was on third-shift patrol with his police dog on February 10, 2015, when he noticed the license plate light on a car driven by Mikayla Elliot-Wach was not functioning. At around 1:37 a.m., Officer Bovy initiated a traffic stop. While Elliot-Wach attempted to locate her proof of vehicle insurance, Officer Bovy checked her record as well as the record of Flippo, her passenger. Officer Bovy learned there was an outstanding warrant for Flippo's arrest in another jurisdiction but the issuing agency would not come to Waterloo to execute the warrant because of the distance involved.

Upon returning to the car, Officer Bovy learned that Elliot-Wach was unable to locate proof of insurance. The officer also confirmed that Flippo was aware of the warrant for his arrest. Officer Bovy then asked Elliot-Wach if there was anything illegal in the car. The officer testified about his observations[1] of Elliot-Wach's reaction:

> She got very quiet, looked down. I asked her if I could search the vehicle. She hesitated, looked down again, and then she asked . . . something to the effect [of], "Do I have the right to say no?" I said, "Yes, you have the right to say no on . . . me personally

---

[1] Although there was a dash-cam video recording of the stop, the audio on the officer's body microphone did not begin recording until halfway through the encounter.

searching your vehicle." . . . Her whole demeanor changed when I had started that conversation, and I'm not sure if she actually answered then or if I just told her I have my dog, I'll just run my dog around the vehicle.

Elliot-Wach and Flippo were told to exit the car so that Officer Bovy could conduct a dog sniff of the car. After the pair got out of the car, Officer Bovy walked his K-9 partner, Niko, around the car to conduct a sniff test for controlled substances. At around 1:55 a.m., Niko indicated the presence of controlled substances in the car. The officer searched the glove compartment and found a small plastic bag containing marijuana and a partially burnt marijuana blunt. After the officer apprised both Elliot-Wach and Flippo of their rights, Flippo described to the officer what controlled substance was in the car, explained where it was located, and stated that it belonged to him.

The State charged Flippo with possession of marijuana, first offense, in violation of Iowa Code section 124.401(5) (2015), a serious misdemeanor. Flippo moved to suppress the evidence discovered during the vehicle search, arguing the search violated his rights under the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution. Specifically, he claimed that he was unlawfully seized while Niko sniffed around the car. After a hearing, the district court denied the motion. Flippo waived his right to a jury trial, and after a trial on the minutes of evidence, the district court found Flippo guilty of possession of marijuana.

**II. Scope and Standard of Review.**

We review a claim the trial court erred in denying a motion to suppress on constitutional grounds de novo. *See State v. Pals*, 805 N.W.2d 767, 771 (Iowa

2011). In doing so, we make "an independent evaluation of the totality of the circumstances as shown by the entire record." *Id.* (quoting *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001)). Because the district court had the opportunity to evaluate the credibility of the witnesses, we give deference to its fact findings but are not bound by them. *See id.*

**III. Analysis.**

The sole contention Flippo raised at the suppression hearing was the lawfulness of prolonging the traffic stop to allow Niko to sniff the vehicle. Flippo's counsel conceded the initial stop of the vehicle to investigate the license plate light was lawful, and that Flippo did not have standing to contest the vehicle's search.[2] Counsel iterated, "[O]ur issue is with the continued detention [of the vehicle]."

The district court held that Flippo was not seized at any point during the traffic stop of the vehicle—either during the initial stop or while Officer Bovy had Niko conduct a sniff of the vehicle. The court stated:

> Although a traffic stop of a vehicle is a seizure of the driver for purposes of the Fourth Amendment, it does not constitute a seizure of passengers, and contact with passengers by law enforcement, including a request for identification, are merely incidental to the stop of the vehicle and do not constitute a seizure.

---

[2] Even in light of defense counsel's concession, the district court specifically concluded Flippo did not have standing to challenge the search of the vehicle because he did not own the vehicle, was not driving it, and did not have a property interest in it. *See State v. Halliburton*, 539 N.W.2d 339, 342-43 (Iowa 1995) (holding a passenger in a vehicle did not have a legitimate expectation of privacy in absence of evidence he was in control of the vehicle or otherwise possessed it at the time of the search); *State v. Nurcaro*, 614 N.W.2d 856, 859 (Iowa 2000) (holding counsel was not ineffective in conceding the defendant lacked standing to challenge search the of the vehicle in which the defendant was a passenger because the defendant lacked a privacy interest in the vehicle and its contents).

Flippo contests this finding.[3]

"When the police stop a car and temporarily detain an individual, the temporary detention is a 'seizure' within the meaning of the Fourth Amendment." *State v. Heminover*, 619 N.W.2d 353, 357 (2000), *abrogated on other grounds by Turner*, 630 N.W.2d at 606 n.2. This applies equally to passengers of an automobile:

> No principled basis exists for distinguishing between the privacy rights of passengers and drivers in a moving vehicle. When the vehicle is stopped they are equally seized; their freedom of movement is equally affected. We therefore hold that occupants of motor vehicles, whether drivers or passengers, ordinarily have a legitimate expectation of privacy which is invaded when the vehicle is stopped by the government.

*State v. Eis*, 348 N.W.2d 224, 226 (Iowa 1984). Accordingly, Flippo was seized when the vehicle was stopped and throughout the duration of the stop.

---

[3] The State argues Flippo failed to preserve error on this claim because the court never addressed the question of Flippo's standing to challenge the continued detention of the vehicle and Flippo failed to request an expanded ruling. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be raised *and decided* by the district court before we will decide them on appeal." (emphasis added)). However, the court's finding that no seizure occurred presupposes a finding that he had standing to challenge any seizure. Nothing in the record shows the prosecutor contested Flippo's standing to challenge his continued detention. On this record, Flippo's counsel had no duty to ask the court to enlarge its findings to address the question of standing.

Furthermore, it is axiomatic that one has standing to challenge the lawfulness of a personal detention. *See State v. Lowe*, 812 N.W.2d 554, 567 (Iowa 2012) (holding a showing the defendant's own constitutional rights have been violated eliminates any further need to make an independent showing of standing); *State v. Portillo*, 258 P.3d 446, 469 (N.M. Ct. App. 2011) ("Although an individual may lack standing to directly challenge a search of a vehicle, he or she may nevertheless contest the lawfulness of his or her own detention and seek to suppress evidence found as a result of that detention."); *cf. In re Prop. Seized from Pardee*, 872 N.W.2d 384, 396-97 (Iowa 2015) (finding district court in a forfeiture case erred in denying motion to suppress evidence that was filed by a passenger of a vehicle where the officer unreasonably prolonged a stop to allow a dog sniff without reasonable suspicion). Therefore, if Flippo was personally seized during the traffic stop, he has standing to challenge the duration of the stop to allow the dog sniff.

Flippo concedes that Officer Bovy had grounds to initiate the traffic stop based on the nonfunctional license plate light. "[I]t is well-settled law that a traffic violation, no matter how minor, gives a police officer probable cause to stop the motorist."[4] *State v. Hoskins*, 711 N.W.2d 720, 726 (Iowa 2006). On this basis, Officer Bovy was permitted to detain the vehicle long enough to allow him to conduct an investigation reasonably related in scope to the circumstances that justified the stop. *See Florida v. Royer*, 460 U.S. 491, 500 (1983) (holding a valid traffic stop may become "unlawful if it is prolonged beyond the time reasonable required to complete [its] mission"); *Aderholdt*, 545 N.W.2d at 564. An officer conducting a traffic stop may make "ordinary inquiries" incident to the stop, including checking the driver's license, inspecting the car's registration and proof of insurance, and determining the existence of any outstanding warrants. *Rodriguez v. United States*, 135 S. Ct. 1609, 1614-15 (2015); *State v. Coleman*, 890 N.W.2d 284, 299 (Iowa 2017) ("[I]t is possible that when there is a valid

---

[4] Even the most seemingly trivial traffic infraction or equipment violation gives a peace officer probable cause or reasonable suspicion to stop a motorist. *See, e.g.*, *United States v. Gaffney*, 789 F.3d 866, 868, 870-71 (8th Cir. 2015) (0.8 mile-per-hour over speed limit); *Pardee*, 872 N.W.2d at 386 (Iowa 2015) (burned-out taillight); *State v. Lyon*, 862 N.W.2d 391, 392-95 (Iowa 2015) (rear license plate not illuminated); *State v. Harrison*, 846 N.W.2d 362, 363-69 (Iowa 2014) (license-plate-frame infraction); *State v. Aderholdt*, 545 N.W.2d 559, 563 (Iowa 1996) (dark window tint); *State v. Mitchell*, 498 N.W.2d 691, 692-64 (Iowa 1993) (burned-out taillight); *In re Prop. Seized from Thao*, No. 14-1936, 2016 WL 1130280, at *5 (Iowa Ct. App. Mar. 23, 2016) (three miles-per-hour over speed limit); *State v. Hanrahan*, No. 12-0012, 2013 WL 4009675, at *1 (Iowa Ct. App. Aug. 7, 2013) (four miles-per-hour over speed limit). Furthermore, a 2015 Facebook post on the Iowa DOT Motor Vehicle Enforcement's page suggests that if a motorist does not want to be stopped by law enforcement, the validation sticker on the vehicle's license plate must be placed in the correct location on the plate. *See* Iowa DOT Motor Vehicle Enforcement, *Don't Want to Get Stopped by Law Enforcement?*, Facebook (June 8, 2015), https://www.facebook.com/IowaMVE/posts/1003476763004122; *see also* Iowa Admin. Code r. 761-400.53(1) (stating, but for a few exceptions, "[t]he validation sticker shall be affixed to the lower left corner of the rear registration plate"); *State v. Nguyen*, No. 13-0045, 2013 WL 5498072, at *2-3 (Iowa Ct. App. Oct. 2, 2013) (discussing stop for improper placement of validation sticker).

ongoing traffic stop officers may properly seek driver's identification, registration, and insurance information."). Inquiries into matters unrelated to the initial justification for the stop are permissible as long as those inquiries "do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

Flippo argues his detention became unreasonable when Officer Bovy extended the duration of the stop to allow a dog sniff of the car because it was beyond the scope of the initial stop. He claims Officer Bovy lacked reasonable suspicion of criminal activity to justify prolonging the stop for the search. *See Rodriguez*, 135 S. Ct. at 1615 ("Lacking the same close connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission."); *Pardee*, 872 N.W.2d at 393 ("A dog sniff, unlike matters such as 'checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance,' can only be undertaken without individualized suspicion if it does not prolong the traffic stop." (quoting *Rodriguez*, 135 S. Ct. at 1615)).

To broaden the scope of a lawful traffic stop, an officer must have reasonable suspicion of other wrongdoing. *See Aderholdt*, 545 N.W.2d at 564. The reasonable suspicion had to have developed within the time reasonably necessary to execute the initial stop. *See Pardee*, 872 N.W.2d at 391. Therefore, Officer Bovy had to possess some independent reasonable suspicion of wrongdoing in order to extend the scope of the stop to include the dog sniff of the vehicle. *See Rodriguez*, 135 S.Ct. at 1615-16. We apply an objective

standard in determining whether reasonable suspicion existed. *See State v. Simmons*, 714 N.W.2d 264, 272 (Iowa 2006).

After stopping the vehicle, Officer Bovy conducted the ordinary inquiries that accompany a traffic stop by asking Elliot-Wach for her license and proof of insurance. While Elliot-Wach looked for proof of insurance, Officer Bovy returned to his vehicle in order to check the validity of her license and the existence of any outstanding warrants. Officer Bovy learned that Flippo had a warrant for his arrest, although the issuing jurisdiction was unwilling to travel to Waterloo to execute it. The officer then returned to the vehicle, learned Elliot-Wach was unable to locate proof of insurance, and confirmed Flippo knew of the outstanding warrant. At this point, the purpose of the stop had terminated. However, Officer Bovy then asked Elliot-Wach if she had anything illegal in the vehicle. He stated that the change in Elliot-Wach's demeanor in response to this question led him to suspect wrongdoing.

Nothing in the record supports finding reasonable suspicion sufficient to justify prolonging the traffic stop. To support a finding of a reasonable suspicion, "the State must show by a preponderance of the evidence that the stopping officer had specific and articulable facts, which taken together with rational inferences from those facts, to reasonably believe criminal activity may have occurred. Mere suspicion, curiosity, or hunch of criminal activity is not enough." *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004) (internal citations omitted). The only "fact" Officer Bovy provided was a general claim that Elliot-Wach's demeanor changed after he asked if she had anything illegal in her vehicle. Officer Bovy provided no rationale for asking the question. He did not specify in

what manner her demeanor had changed, nor did he provide any further facts that would support the belief that the vehicle contained something illegal.  The officer did not specify what contraband he believed Elliot-Wach or Flippo to be harboring.  His statement that Elliot-Wach's demeanor changed after he asked this question is insufficient to give rise to reasonable suspicion.

Flippo argues that, because no reasonable suspicion supported prolonging the traffic stop to allow the dog to sniff the vehicle, the evidence obtained as a result of the unlawful detention must be excluded.

> The exclusionary rule bars the use of both the evidence directly seized in an unlawful detention and evidence discovered indirectly through the use of evidence or information gained in the unlawful detention.  The test is whether the incriminating evidence was obtained by exploitation of the illegal detention rather than by means sufficiently distinguishable to purge the evidence of the primary taint.

*State v. McCoy*, 692 N.W.2d 6, 23 (Iowa 2005).  Although the State claims the evidence would have been discoverable regardless of any unlawful detention because Office Bovy could have lawfully seized Flippo pursuant to the warrant for his arrest, this issue was not raised below and will not be considered on appeal.  *See Meier*, 641 N.W.2d at 537.

The district court erred in denying Flippo's motion to suppress the evidence.  Accordingly, we reverse Flippo's conviction and sentence, and we remand the case for new trial.

**REVERSED AND REMANDED FOR NEW TRIAL.**