# United States Court of Appeals
### For the Eighth Circuit
_____

No. 18-3589
_____

United States of America

*Plaintiff - Appellee*

v.

Tereall Deshawn Green

*Defendant - Appellant*

_____

No. 18-3591
_____

United States of America

*Plaintiff - Appellee*

v.

Javonta Juan Herbert

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Waterloo
_____

Submitted: September 23, 2019
Filed: December 27, 2019
_____

Before GRUENDER, ARNOLD, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

In this consolidated appeal, Tereall Green challenges the district court's[1] denial of his motion to suppress evidence, and both Green and Javonta Herbert appeal their respective sentences for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). We affirm.

**I.**

At approximately 1:00 a.m. on January 13, 2018, Jordan Ehlers, a police officer in Waterloo, Iowa, observed a black Nissan Rogue SUV that, based on his visual estimation, was speeding. Ehlers ran a search of the license plate number on the SUV, which returned a record for a different vehicle. While following the vehicle, he also noticed that a license plate frame on the SUV covered a portion of the license plate and registration. Based on these three facts, Officer Ehlers initiated a traffic stop.

Once the SUV stopped, Ehlers shined his spotlight on the back of the vehicle, and he observed passengers making what he perceived as suspicious movements. Ehlers exited his patrol car and approached the front passenger side of the vehicle. As the front passenger opened his window, Ehlers immediately smelled alcohol. He also observed open liquor bottles in the car and noticed that the floorboard appeared wet. Ehlers requested identification from the driver and from each of the three passengers. The front seat passenger did not have identification but identified himself as Tereall Green. Officer Ehlers recognized Green's name from a prior

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, adopting the report and recommendation of the Honorable C.J. Williams, Chief Magistrate Judge, United States District Court for the Northern District of Iowa.

intelligence report indicating that Green was seen in a Facebook video possessing a weapon. Ehlers then turned to the back-seat passengers, requesting identification from each of them. When one of them rolled down his window, Ehlers smelled marijuana. This passenger identified himself as Deshawn Marks. The other back-seat passenger said his name was "Spencer Green." Ehlers noticed that "Spencer Green" appeared nervous, and he recognized "Green" as Javonta Herbert from prior contact with him.

After Officers Randy Girsch and Kenneth Schaaf arrived on the scene, Officer Ehlers asked Tereall Green to exit the SUV. He conducted a brief frisk of Green—quicker than normal due to the cold temperature. He did not find anything. Ehlers then frisked Marks, finding clear plastic baggies of marijuana. Because both Green and Marks were shivering, Officer Girsch offered to let them sit in his patrol car, an offer both men eventually accepted.

Back at the SUV, Ehlers asked "Spencer Green" to step out of the car. Ehlers asked if he was Javonta Herbert, and Herbert conceded that was his real name. Ehlers then conducted a patdown of Herbert. As Ehlers frisked Herbert, Officer Schaaf used his flashlight to look into the backseat floorboard of the SUV. He saw a handgun where Herbert had been sitting and immediately yelled "ten thirty-two"—a police code that indicated he had discovered a firearm in the vehicle. Ehlers placed Herbert under arrest.

Officer Girsch, who was standing beside the patrol car in which Tereall Green and Marks were sitting, heard Officer Schaaf call out the "ten thirty-two." Girsch decided to handcuff Green while another officer handcuffed Marks. Although he had observed Ehlers frisk Green earlier in the stop, Officer Girsch frisked him again, this time conducting a more thorough patdown. Girsch discovered a loaded firearm hidden in Green's pants. Green subsequently fled on foot. Officers pursued and captured him within minutes.

Both Green and Herbert were indicted on charges of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In pre-trial matters, the district court denied Green's motion to suppress evidence gathered during the traffic stop, finding that Ehlers had probable cause to stop the SUV and that neither patdown of Green constituted an unreasonable search in violation of the Fourth Amendment. Green and Herbert both entered conditional guilty pleas.

At sentencing, the district court applied to both Green's and Herbert's guideline calculations a four-level enhancement for possession of a firearm in connection with another felony offense. *See* U.S.S.G. § 2K2.1(b)(6)(B). Herbert objected to the application of the enhancement, and the district court overruled the objection. For Green, the court calculated a total offense level of 23, a criminal history category of III, and an advisory guidelines range of 57 to 71 months. After rejecting Green's motion for a downward variance, the court imposed a sentence of 71 months' imprisonment. For Herbert, the court initially calculated a total offense level of 15, a criminal history category of VI, and an advisory guidelines range of 41 to 51 months. The Government moved for a three-level upward departure pursuant to U.S.S.G. § 4A1.3 based on Herbert's underrepresented criminal history. The district court granted the motion, calculating a new total offense level of 18, a criminal history category of VI, and a guidelines range of 57 to 71 months' imprisonment. The district court also sentenced Herbert to 71 months' imprisonment.

**II.**

Green appeals the denial of his motion to suppress, arguing that the traffic stop was unlawful and that the officers lacked reasonable suspicion to frisk him.[2]

---

[2]In a heading of his brief, Green suggests that the district court erred in denying his motion to suppress statements obtained in violation of the Fifth Amendment. But Green failed to support this conclusion with any argument, facts, reasoning, or citation to authority, and he did not identify any specific statements the

He also challenges his 71-month sentence, arguing the district court erred in denying his motion for a downward variance. Herbert too appeals his 71-month sentence, arguing we should overrule our decision in *United States v. Walker*, 771 F.3d 449 (8th Cir. 2014), the district court abused its discretion in departing upwards, and his sentence is substantively unreasonable. We address each argument in turn.

A.

We first address Green's argument that the district court erred in denying his motion to suppress evidence on the basis that the traffic stop was unlawful. Green claims that Officer Ehlers lacked probable cause to stop the SUV because the driver "was not driving in a suspicious manner" and the "vehicle in question obeyed the traffic laws." Green's claims are not supported by the record, and we conclude that the traffic stop was not unlawful.

"We review the denial of a motion to suppress de novo but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." *United States v. Tamayo-Baez*, 820 F.3d 308, 312 (8th Cir. 2016). "This court will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *United States v. Collins*, 883 F.3d 1029, 1031 (8th Cir. 2018) (*per curiam*).

"Under the Fourth Amendment, a traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006). "Even a minor traffic violation provides probable cause for a traffic stop." *United States v. Harris*, 617 F.3d 977, 979 (8th Cir. 2010).

district court should have suppressed. Therefore, we consider Green's challenge to the district court's suppression ruling regarding his statements waived. *See United States v. Howard*, 532 F.3d 755, 760 (8th Cir. 2008).

In this case, the district court found that Officer Ehlers had probable cause to believe the SUV was in violation of three different Iowa traffic laws. First, the district court credited Officer Ehlers's testimony that he observed the SUV speeding. Though we have cautioned that "there must be sufficient indicia of reliability for a court to credit as reasonable an officer's visual estimate of speed," *United States v. Gaffney*, 789 F.3d 866, 869 (8th Cir. 2015), we find the district court's determination that the SUV was speeding, based on Ehlers's credibility, training, and video evidence, is not clearly erroneous, and therefore Ehlers had probable cause to stop the vehicle. *See id.* at 869-70; Iowa Code § 321.285.

Furthermore, Ehlers also observed two other infractions that provided grounds to stop the SUV. First, Ehlers noticed that the license plate frame on the SUV covered the letters on the plate and the registration sticker. *See* Iowa Code §321.37(3) ("It is unlawful for the owner of a vehicle to place any frame around or over the registration plate which does not permit full view of all numerals and letters printed on the registration plate."). Second, prior to initiating the stop, Officer Ehlers also ran an inquiry of the license plate which returned a record showing that the registration belonged on a silver 2004 Mercedes-Benz ML 500, but the plate was on a black 2011 Nissan Rogue. *See* Iowa Code § 321.17 (providing, in relevant part, that it is "a simple misdemeanor . . . for any person to drive . . . a vehicle of a type required to be registered under this chapter which is not registered"). Because the license plate frame obscured the plate, Ehlers had probable cause to make a stop, *see Harris*, 617 F.3d at 979, and because the plates were registered to a different vehicle, Ehlers at least had a reasonable suspicion that the SUV may not be properly registered at all, *see United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012); *see also United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014) ("Reasonable suspicion exists when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." (internal quotation marks omitted)). Therefore, initiating a traffic stop was not a violation of the Fourth Amendment.

We now turn to Green's argument that the officers lacked a reasonable, articulable suspicion to frisk him during the stop. Based on his briefing, we are unsure if Green intends to challenge the reasonableness of the initial frisk as well as the second. Regardless, we conclude both patdowns were reasonable.

"Officers may conduct a protective pat-down search for weapons during a valid stop . . . when they have objectively reasonable suspicion that a person with whom they are dealing might be armed and presently dangerous . . . ." *Gaffney*, 789 F.3d at 870. "In determining whether reasonable suspicion exists, we consider the totality of the circumstances in light of the officers' experience and specialized training." *United States v. Preston*, 685 F.3d 685, 689 (8th Cir. 2012). "A pat-down is permissible if a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* (brackets and internal quotation marks omitted).

The first patdown was justified by reasonable, articulable suspicion. Officer Ehlers recognized Green's name from a prior intelligence report indicating that Green possessed a weapon in a Facebook video. Before he conducted a frisk, Officer Ehlers told Officer Schaaf that he had "recent intel for a [ten] thirty-two"—the Waterloo Police Department's code for a weapon—for the "front seat passenger." Officer Ehlers also smelled marijuana in the vehicle, and he had observed movement prior to the stop that he considered suspicious. Given the presence of illegal narcotics, Ehlers could have suspected that drugs were being transported in the car. *See United States v. Binion*, 570 F.3d 1034, 1039 (8th Cir. 2009). "A suspicion on the part of police that a person is involved in a drug transaction supports a reasonable belief that the person may be armed and dangerous because weapons and violence are frequently associated with drug transactions." *United States v. Crippen*, 627 F.3d 1056, 1063 (8th Cir. 2010). Viewing the totality of the circumstances, we conclude that Ehlers had reasonable suspicion that Green was armed and dangerous. Therefore, the first frisk was reasonable.

Officer Girsch's second frisk of Green was also reasonable. Although Girsch had observed Ehlers's frisk of Green, it was not unreasonable for him to conduct a second, more thorough patdown in light of new information that Schaaf had discovered a firearm, which heightened the risk that other passengers in the vehicle were armed. Although the presence of a gun in possession of one individual does not necessarily justify a patdown of a companion of that individual, it is a fact to be considered in determining the overall reasonableness of the officer's actions. *See Wilson v. Lamp*, 901 F.3d 981, 987 (8th Cir. 2018); *United States v. Menard*, 95 F.3d 9, 11 (8th Cir. 1996) (concluding that it was reasonable to frisk the companion of an armed individual because finding one weapon "heightened the threat to officer safety"). Moreover, given that the first patdown was quick and cursory due to the frigid temperatures, it was reasonable in light of the discovery of one weapon for Girsch to conduct a more thorough patdown. *See United States v. Osbourne*, 326 F.3d 274, 278 (1st Cir. 2003) (finding the thoroughness of the initial frisk to be among the relevant factors to be considered in evaluating the reasonableness of a second frisk).

Because Officer Ehlers had probable cause to conduct the traffic stop and both patdowns were supported by reasonable suspicion, the district court did not err in denying Green's motion to suppress evidence seized during the stop. *See Binion*, 570 F.3d at 1038-40.

B.

We next turn to Green's and Herbert's arguments regarding the sentences imposed by the district court. "When reviewing the imposition of sentences, we first ensure that the district court committed no significant procedural error," *United States v. White*, 816 F.3d 976, 987 (8th Cir. 2016) (internal quotation marks omitted), such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the

Guidelines range," *United States v. Gonzalez*, 573 F.3d 600, 605 (8th Cir. 2009). We review a district court's factual findings for clear error and its application of the sentencing guidelines *de novo*. *United States v. Johnson*, 846 F.3d 1249, 1250 (8th Cir. 2017).

In the absence of procedural error, we consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. *United States v. Petersen*, 848 F.3d 1153, 1157 (8th Cir. 2017). "A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear error of judgment in weighing those factors." *United States v. Kreitinger*, 576 F.3d 500, 503 (8th Cir. 2009).

Green and Herbert both argue that the court procedurally erred by applying the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B). This enhancement applies when a defendant "[u]sed or possessed any firearm or ammunition in connection with another felony offense." § 2K2.1(b)(6)(B). For his part, Herbert contends that the district court erred in applying the four-level enhancement because under the relevant Iowa carrying-weapons offense, "there is no criminal conduct outside of the possession of the firearm." *See* Iowa Code § 724.4(1). He claims the enhancement is meant to apply when the underlying conviction relates to "conduct separate and distinct from the mere possession of the firearm."

Herbert concedes that this argument is controlled by *United States v. Walker*, 771 F.3d 449 (8th Cir. 2014). In *Walker*, we held that a violation of Iowa Code section 724.4(1), as here, constitutes "another felony offense" for purposes of a § 2K2.1(b)(6)(B) enhancement. 771 F.3d at 452-53. We thus reject Herbert's argument that the § 2K2.1(b)(6)(B) enhancement does not apply. *See United States v. Manning*, 786 F.3d 684, 686 (8th Cir. 2015) ("A panel of this Court is bound by a prior Eighth Circuit decision unless that case is overruled by the Court sitting en banc.").

Recognizing that *Walker* controls, Green argues that the district court abused its discretion in denying his motion for a downward variance after applying the § 2K2.1(b)(6)(B) enhancement because of the "redundancy" of "the charged conduct." We find this argument unavailing. Although a sentencing court "may choose to deviate from the guidelines because of a policy disagreement," *United States v. Manning*, 738 F.3d 937, 947 (8th Cir. 2014), it was not an abuse of discretion for the district court to refuse to do so, *see United States v. Beckman*, 787 F.3d 466, 498-99 (8th Cir. 2015).[3]

Herbert next argues that the district court procedurally erred by not properly performing an incremental analysis when it departed upward under U.S.S.G. § 4A1.3. *See United States v. Timberlake*, 679 F.3d 1008, 1011 (8th Cir. 2012); *Gonzalez*, 573 F.3d at 605. Specifically, Herbert contends that the court erred by departing upward three levels when an "upward departure of two offense levels would be sufficient" to account for his criminal history because many of his crimes were committed as a minor or young adult or were property crimes.

"A district court's decision to depart upward from the advisory guideline range is reviewed for abuse of discretion, and the extent of that departure is reviewed for reasonableness." *United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009). Section 4A1.3(a)(1) of the Guidelines provides that a sentencing court may depart upward "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." If, as here, a defendant has already met the qualifications for a category VI criminal

---

[3]Green filed a *pro se* petition for a writ of mandamus after the parties submitted the briefing in this case. Because a "writ of mandamus is an extraordinary remedy," an appellant must establish a "clear and indisputable right" to the relief sought. *Perkins v. Gen. Motors Corp.*, 965 F.2d 597, 598-99 (8th Cir. 1992). But Green failed to present any relevant law or cite to any facts to support his petition. He thus has failed to provide the court with any basis on which to accept his arguments, and therefore, the petition is denied. *See United States v. Sigillito*, 759 F.3d 913, 933-34 (8th Cir. 2014).

history, "the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level . . . until it finds a guideline range appropriate to the case." § 4A1.3(a)(4)(B).

The district court did not abuse its discretion when it decided to depart upward based on a determination that criminal history category VI substantially underrepresented the seriousness of Herbert's criminal history and risk of recidivism. At sentencing, the district court found that Herbert had a greater number of criminal history points than was typical of a defendant with a category VI criminal history even though several criminal offenses had not been scored, that he was at "an extremely high risk to recidivate," and that he posed "a risk of danger to the community." Herbert has multiple convictions for burglary, theft, harassment, and disorderly conduct. His record includes no fewer than four convictions for motor vehicle theft alone, and he has engaged the police in two car chases, crashing one vehicle into a pole and flipping another. He has also repeatedly committed crimes while on probation or parole. Indeed, Herbert committed the very crime at issue— being a felon in possession of a firearm—after having escaped from a detention facility to which he had been committed for a prior felony conviction. *See United States v. Mosby*, 543 F.3d 438, 442 (8th Cir. 2008) (noting that a sentencing court may consider whether the defendant "repeatedly committed crimes while on probation or parole" and whether the instant offense was committed "while [the defendant] was on probation from his last conviction"). We thus conclude that the district court did not abuse its discretion in determining that Herbert's "obvious incorrigibility" demonstrates that "leniency has not been effective," *United States v. Abrica-Sanchez*, 808 F.3d 330, 335 (8th Cir. 2015), and that as a result, the "factors weigh in favor of . . . [a] decision to upwardly depart," *Gonzalez*, 573 F.3d at 607.

We are also satisfied with the district court's explanation of the extent of its upward departure and therefore conclude it was reasonable to depart upward three levels. *See Ruvalcava-Perez*, 561 F.3d at 886-87. For the same reasons we likewise reject Herbert's contention that the district court committed a clear error of judgment

in refusing to grant his motion for a downward variance under 18 U.S.C. § 3553, choosing instead to impose a sentence of 71 months' imprisonment. *See id.* at 887.

At some length, Herbert sets out a kind of mathematical formula for calculating an appropriate upward departure. But the Supreme Court has explicitly rejected that kind of review because such a "formula is a classic example of attempting to measure an inventory of apples by counting oranges." *See Gall v. United States*, 552 U.S. 38, 49 (2007). This we will not ask a district court to do. Instead, we review a sentence not based on a mathematical calculation of the extent of a departure or variance, but as always, with an eye towards its substantive reasonableness given the individual characteristics of the defendant. *See United States v. Feemster*, 572 F.3d 455, 461-62 (8th Cir. 2009) (*en banc*).

After the upward departure, the court calculated a new guidelines range of 57 to 71 months' imprisonment, and the district court adequately justified its decision to impose a sentence at the top of the range. While Herbert argues that the district court "failed to give appropriate weight to his life circumstances" under 18 U.S.C. § 3553(a) because it should have given more weight to his dysfunctional upbringing, the district court considered Herbert's arguments at sentencing, finding that although "he may have had a dysfunctional upbringing at times, he had the opportunity to change" through various rehabilitation and probation programs. The district court instead emphasized that Herbert was a "risk to the safety of the public" who "lacks respect for the law and for authority." The court considered Herbert's criminal history too, noting that the eighteen criminal history points calculated in the presentence investigation report were five more than the thirteen required for category VI, *see* U.S.S.G. ch. 5, pt. A, and even that number did not reflect several of Herbert's prior convictions. *See Ruvalcava-Perez*, 561 F.3d at 886; *Mosby*, 543 F.3d at 442. Herbert "must show more than the fact that the district court disagreed with his view of what weight ought to be accorded certain sentencing factors," *United States v. Townsend*, 617 F.3d 991, 995 (8th Cir. 2010), because a district court has "wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence," *White*,

816 F.3d at 988.  In light of this wide latitude and Herbert's extensive criminal history, we cannot say that the district court abused its discretion in departing upward three offense levels, denying the downward variance, and sentencing Herbert to 71 months' imprisonment.  *See id.*[4]

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

_____

_____

[4]Herbert filed a *pro se* Federal Rule of Appellate Procedure 28(j) letter requesting that we review his appeal in light of *Rehaif v. United States*, a case in which the Supreme Court held that in a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2), "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."  588 U.S. ---, 139 S. Ct. 2191, 2200 (2019).  Here, the relevant category of persons is anyone "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year."  18 U.S.C. § 922(g)(1).  Assuming but not deciding that Herbert has shown error, we conclude that any error did not affect his substantial rights.  *See United States v. Wroblewski*, 816 F.3d 1021, 1025 (8th Cir. 2016) (stating that plain-error review applies where a defendant does not object in the district court, and that to obtain relief on plain-error review, the "defendant must show that the district court committed an error that was plain and that affected his substantial rights").  Because the plain-error doctrine is intended to "correct only particularly egregious errors," *United States v. Young*, 470 U.S. 1, 15 (1985) (internal quotation marks omitted), we "may consult the whole record when considering the effect of any error on substantial rights," *United States v. Vonn*, 535 U.S. 55, 59 (2002).  Herbert's presentence investigation report reveals that he was convicted of at least five crimes punishable by imprisonment for a term exceeding one year, and in each case he served more than one year in prison.  It is no surprise then that at his sentencing hearing, Herbert acknowledged that when he was in state prison, he "watched the prison video about having a gun and what the consequences were if [he] was to get caught with a gun, be around a gun, or [have] anything to do with a gun." Accordingly, he cannot show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. House*, 923 F.3d 512, 515 (8th Cir. 2019).