# IN THE COURT OF APPEALS OF IOWA

No. 24-1532
Filed November 13, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TERRY JOSEPH SCHMITZ,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Cerro Gordo County,
Karen Kaufman Salic, Judge.


        Terry Schmitz appeals the district court's denial of his motion to suppress.
**AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant
Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant
Attorney General, for appellee.


        Considered without oral argument by Tabor, C.J., Badding, J., and
Doyle, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2025).

**DOYLE, Senior Judge.**

On appeal from his conviction for operating while intoxicated (OWI), Terry Schmitz challenges the district court's denial of his motion to suppress evidence from the traffic stop. Schmitz contends the officer did not have probable cause to stop the vehicle because the officer made a mistake of law about the speed limit. We affirm the district court's ruling.

**Background Facts and Proceedings.**

On September 30, 2024, Iowa State Patrol Trooper Sneider was eastbound on B-15 heading into the town of Plymouth. As he approached College Avenue, he observed Schmitz operating a motorcycle traveling westbound on B-15 from its intersection with Broad Street. The trooper's radar equipment clocked Schmitz going fifty-two miles per hour while Schmitz was on the bridge between Broad Street and College Avenue. After Schmitz passed by him, the trooper made a U-turn. He caught up with Schmitz near the western edge of Plymouth and pulled him over for speeding. After taking field sobriety tests, Schmitz was arrested and charged with OWI.

Schmitz filed a motion to suppress arguing the trooper lacked probable cause to stop him for speeding because the trooper made a mistake of law about the speed zone where Schmitz was clocked driving fifty-two miles per hour. The speed limit is not posted for westbound traffic on that section of B-15 between Broad Street and College Avenue. The trooper believed the speed limit to be twenty-five miles per hour. Schmitz claimed, and continues to claim on appeal,

that the default speed limit at the location was fifty-five miles per hour,[1] not the twenty-five miles per hour as testified to by the trooper. After a hearing, the district court concluded, among other things, that since Schmitz was traveling at least fifty-two miles per hour, he violated the state law speed limit of forty-five miles per hour under Iowa Code section 321.285(2)(a)(3),[2] the default speed limit in a suburban district within a city. The district court denied the motion to suppress. Schmitz was convicted of OWI after a bench trial. He now appeals.

**Standard of Review.**

"The standard of review for a constitutional search and seizure challenge is de novo." *State v. McClain*, 20 N.W.3d 488, 494 (Iowa 2025) (citation omitted). We make an "independent evaluation of the totality of the circumstances" as shown by the entire record. *Id.* (citation omitted). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of the witnesses, but we are not bound by those findings." *Id.* (citation omitted).

**Analysis.**

Schmitz claims the traffic stop was unlawful under the Fourth Amendment of the United States Constitution and article 1, section 8 of the Iowa Constitution,

---

[1] Iowa Code § 321.285(3) (2023) ("Unless otherwise provided in this section or by other speed restrictions, the speed limit for all vehicular traffic shall be fifty-five miles per hour.").

[2] With exceptions not applicable here, Iowa Code section 321.285(2)(a)(1), (2) and (3) restrict speed to twenty miles per hour in business districts, twenty-five miles per hour in residence and school districts, and forty-five miles per hour in suburban districts. There was no evidence that Schmitz's speeding violation occurred in a business district, residence district, or school district. "'Suburban district' means *all other parts* of a city not included in the business, school, or residence districts." Iowa Code § 321.1(79) (emphasis added). The evidence establishes that the violation occurred in the City of Plymouth.

both of which prohibit unreasonable searches and seizures by the government. *See State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013). "A traffic stop is a 'seizure' under both Constitutions." *State v. Griffin*, 997 N.W.2d 416, 418 (Iowa 2023). "So if a traffic stop is unreasonable, the stop is unconstitutional. When that occurs, courts can 'suppress'−or exclude from trial−any evidence that law enforcement gained through the traffic stop." *Id*. at 419 (internal citations omitted). "[A] traffic stop is reasonable—and therefore constitutional—when there is probable cause to believe that the motorist violated a traffic law." *Id*. (cleaned up). "[I]t is well-settled law that a traffic violation, no matter how minor, gives a police officer probable cause to stop the motorist."[3] *State v. Hoskins*, 711 N.W.2d 720, 726 (Iowa 2006).

But, asserting that a fifty-five miles-per-hour speed limit applied, Schmitz argues that Trooper Sneider made a mistake of law because he erroneously believed the speed limit to be twenty-five miles per hour where he observed

---

[3] Even the most seemingly trivial traffic infraction or equipment violation gives a peace officer probable cause or reasonable suspicion to stop a motorist. *See, e.g.*, *United States v. Gaffney*, 789 F.3d 866, 868, 870-71 (8th Cir. 2015) (0.8 mile-per-hour over speed limit); *State v. Mumford*, 14 N.W.3d 346, 350 (Iowa 2024) (dirt and grime on license plate); *Griffin*, 997 N.W.2d at 419 (tinted cover over license plate); *In re Pardee*, 872 N.W.2d 384, 386 (Iowa 2015) (burned-out taillight); *State v. Lyon*, 862 N.W.2d 391, 392-95 (Iowa 2015) (rear license plate not illuminated); *State v. Harrison*, 846 N.W.2d 362, 363-69 (Iowa 2014) (license-plate-frame infraction); *State v. Aderholdt*, 545 N.W.2d 559, 563 (Iowa 1996) (dark window tint); *State v. Mitchell*, 498 N.W.2d 691, 692-64 (Iowa 1993) (burned-out taillight); *State v. Lieth*, No. 24-0352, 2025 WL 2058022, at *2 (Iowa Ct. App. July 23, 2025) (cracked windshield); *State v. McFadden*, No. 16-1184, 2017 WL 4315047, at *2 (Iowa Ct. App. Sept. 27, 2017) (dirty license plate); *In re Prop. Seized from Thao*, No. 14-1936, 2016 WL 1130280, at *5 (Iowa Ct. App. Mar. 23, 2016) (three miles-per-hour over speed limit); *State v. Nguyen*, No. 13-0045, 2013 WL 5498072, at *2-3 (Iowa Ct. App. Oct. 2, 2013) (discussing stop for improper placement of validation sticker); *State v. Hanrahan*, No. 12-0012, 2013 WL 4009675, at *1 (Iowa Ct. App. Aug. 7, 2013) (four miles-per-hour over speed limit); *State v. Klinghammer*, No. 09-0577, 2010 WL 200058, at *3 (Iowa Ct. App. Jan. 22, 2010) (snow on license plate).

Schmitz traveling at fifty-two miles per hour. And under the Iowa Constitution, "a mistake of law is not sufficient to justify a stop." *Tyler*, 830 N.W.2d at 294.[4]

No maps were introduced at the suppression hearing, but the district court's description of the area is helpful:

> [T]he city of Plymouth, Cerro Gordo County, Iowa, is a small town, which is entered from the west on highway B-15, which is also referred to as 330th Street. As one approaches the town on B-15, there is a city limit sign, followed by a 45 mile per hour speed limit sign, then after traversing a curve to the left, a 35 mile per hour sign, followed by a sign advising of a stop sign ahead, the intersection with College Avenue (a north-south street), a 25 mile per hour sign, a short bridge, and then a stop sign at the angled intersection with Broad Street, also known as highway S-56 and Thrush Avenue.
>
> To further describe the intersection, B-15 is a mostly an east-west running road but where it intersects Broad Street it is at an angle that faces sharply to the northeast. There is a stop sign on B-15, requiring traffic to stop and yield to traffic on Broad Street. Broad Street is a north-south running road. There is no stop sign or control to enter B-15 from either north or southbound Broad Street. The angle of the intersection makes traveling southbound on Broad Street onto B-15 more of a curve than a turn, and northbound on Broad Street onto B-15 a very sharp back turn. When B-15 traffic is stopped at the stop sign, the Plymouth "downtown" area is to the north, and a very short distance to the south a railroad track crosses Broad Street at an angle which likely required the odd angle of B-15's intersection to Broad Street.
>
> While there may be additional signage on Broad Street, both the north and south approach on Broad Street to the intersection with B-15 display 25 mile per hour speed limit signs: a bit north of the railroad tracks for northbound traffic (as shown in Exhibit 5) and for traffic exiting "downtown" traveling south (as shown in Exhibit 1). It is noted that there is very little distance between these locations. For instance, the intersection of College Avenue with B-15 is within a foot or two of the 25 mph sign which is on the western edge of the beginning of the bridge guard rail, and the Broad Street 25 mile per hour signs perhaps 500 feet from the sign on the bridge.

---

[4] Under the Fourth Amendment, however, a reasonable mistake of law can support a traffic stop. *See Heien v. N. Carolina*, 574 U.S. 54, 57 (2014); *see also State v. Scheffert*, 910 N.W.2d 577, 585 n.2 (Iowa 2018) (noting the "mistake-of-law doctrine is broader under the United States Constitution than it is under the Iowa Constitution").

The speed limit is not posted for the westbound traffic on B-15 between Broad Street and College Avenue. The trooper testified that "once you get onto B-15 from Broad Street and travel west on that road, the first speed limit sign you will come across is also the last speed limit sign you will have in Plymouth, which is fifty-five miles per hour." So, there is no posted speed limit for westbound B-15 traffic from Broad Street until leaving Plymouth, where it is posted at fifty-five miles per hour. The trooper testified that until you reached the fifty-five miles-per-hour speed limit sign, the speed for westbound B-15 traffic was still the same twenty-five-miles-per-hour speed limit as on Broad Street. "[I]t's twenty-five miles an hour, and so I know when you exit Broad Street, the last speed limit you had was twenty-five miles an hour, which continues until you leave town on B15." For those traveling eastbound on B-15 coming into Plymouth, speed limit signs reduce the speed from fifty-five miles per hour to forty-five miles per hour, then to thirty-five miles per hour, and then to twenty-five miles per hour at the bridge between College and Broad. The trooper testified you could have two different speed limits on one stretch of road, one speed going one way and another speed going the other.

Plymouth's speed-zone ordinance was not introduced at the hearing. At the hearing, the State adopted the trooper's position that the Broad Street speed limit of twenty-five miles per hour "does not change just because you turn off onto another road unless there is as sign there that says the speed limit is different." "That twenty-five zone continues on B-15 until he reaches the fifty-five mile an hour sign." Schmitz argued that since no speed limit was posted on B-15 where he was

traveling, the "default" state speed limit of fifty-five miles per hour applied. *See* Iowa Code § 321.285(3).

In applying Iowa Code section 321.385(2)(a)(3), the district court concluded that "within the limits of any town, a driver cannot drive faster than 45 miles per hour." "[Schmitz] was traveling at 52 miles per hour, which exceeds the speed limit at any location within any town." In addition, the district court took sua sponte judicial notice of the City of Plymouth's ordinance setting the speed limit on Broad Street in the city at twenty-five miles per hour and concluded, like the trooper, that the twenty-five-miles-per-hour zone on Broad Street "would remain the speed limit until a different speed limit sign was posted even though there is not additional signage after turning from Broad Street onto B15-330th Street." Furthermore, the court concluded Schmitz, travelling fifty-two miles per hour, violated each of the possible posted speed limit signs throughout the area for eastbound traffic.[5]

On appeal, Schmitz argues the default state fifty-five miles-per-hour speed limit under Iowa Code section 321.285(3) applies since the State neither argued nor proved the violation occurred within a business, residence, school, or suburban district. "If no district applies, the statute then dictates the default speed limit of fifty-five miles per hour applies to the stretch of County Highway B-15 where the officer radared Schmitz's speed." The State counters that the default state forty-

---

[5] The district court noted the conflict between Plymouth's speed zone ordinance and the signage on the approach to town from the west could cause confusion. The ordinance cited by the court provides that the speed limit on B-15 is twenty-five miles per hour "from College Avenue to west City limits." There was no ordinance citation for that segment of B-15 from Broad to College. The court opined that Plymouth should resolve any potential confusion "by posting clear and accurate signage and perhaps amending their ordinance, because perpetuating that confusion will eventually be a legal issue."

five miles-per-hour speed limit under Iowa Code section 321.285(2)(a)(3) applies since it "clearly restricts any in-town speed limit to forty-five miles per hour or less."

We agree with the State. The evidence establishes Schmitz's speeding violation occurred within the City of Plymouth. It was not established whether the violation occurred within a business, residence, or school district.[6] But Iowa Code section 321.1(79) provides that "'Suburban district' means *all other parts of a city* not included in the business, school, or residence districts." (Emphasis added.) So, at a minimum, Schmitz's driving fifty-two miles per hour violated the forty-five miles-per-hour maximum mandated by section 321.285(2)(a)(3). Thus, the trooper had probable cause to stop Schmitz.

That the trooper may have been mistaken in his belief that the lawful speed limit was twenty-five miles per hour does not alter our conclusion. To be sure, a mistake of law is not sufficient to justify a stop under the Iowa Constitution. *Tyler*, 830 N.W.2d at 294. "This does not mean, however, that an *otherwise justified* stop loses its justification simply because an officer misunderstands or mischaracterizes the scope or meaning of a statute." *Griffin*, 997 N.W.2d at 420; *see also Tyler*, 830 N.W.2d at 295 ("[T]he State is *not* limited to the reasons stated by the investigating officer in determining whether either probable cause or reasonable suspicion existed for the stop.") As explained, the stop of Schmitz was justified because he was speeding in violation of section 321.285(2)(a)(3). The

---

[6] "Business district" is defined at Iowa Code section 321.1(7); "Residence district" at section 321.1(63); and "School district" at section 321.1(70). Speed limit in a business district is twenty miles per hour, Iowa Code § 321.285(2)(a)(1), and twenty-five miles per hour in any residence or school district, *id.* § 321.285(2)(a)(2).

stop was still justified even if the trooper's explanation of the law was erroneous. *See Griffin*, 997 N.W.2d at 420.

We need not, and do not, consider the district court's conclusion that the twenty-five miles-per-hour limit on Broad Street "would remain the speed limit until a different speed limit sign was posted even though there is not additional signage after turning from Broad Street onto B15-330th Street." In reaching its conclusion the court considered the signage on Broad Street and took sua sponte judicial notice of Plymouth's speed-zone ordinance. We note the following. "The general rule is that a court of general jurisdiction will not take judicial notice of a city ordinance." *City of Cedar Rapids v. Cach*, 299 N.W.2d 656, 658 (Iowa 1980).

> To enable the courts of this state to take judicial notice of city ordinances, the State can proceed under section 622.62 of our Code. Whether subsection 1 or 2 applies depends upon whether the city code and supplements thereto have been compiled pursuant to section 380.8. If it is established that such compilation has taken place, the courts of this state are to take judicial notice of the ordinances contained in the city code or the city code supplement "when properly pleaded." If the city code and supplements thereto have not been compiled pursuant to section 380.8, the party relying on the city ordinance may have the same received into evidence provided, of course, the circumstances of subsection 2 exist and the provisions thereof are complied with.
> Whether the circumstances and conditions of subsection 1 or 2 have been complied with is often times a fact question which can be resolved only after the issue is raised by a proper pleading or motion.

*Cohen v. Iowa Dist. Ct.*, 508 N.W.2d 78, 82-83 (Iowa Ct. App. 1993). Nothing in the record before us reveals compliance with section 622.62. In any event, the video in evidence clearly shows the twenty-five miles-per-hour speed limit signs for both southbound and northbound traffic on Broad Street near its intersection with B-15.

We are cited no law for the proposition that the speed limit on one street would remain that same speed limit upon turning onto a different street until a different speed limit sign was posted.  The proposition is flawed in that a motorist could turn a corner going from a school district to a residence district and the speed limit would change under section 321.285(2)(a).

For these reasons, we uphold the district court's suppression ruling and affirm Schmitz's conviction.

**AFFIRMED.**