*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2121**

State of Minnesota,
Respondent,

vs.

SerShawn Copone Nicholson,
Appellant.

**Filed November 23, 2015
Affirmed
Chutich, Judge**

Hennepin County District Court
File No. 27-CR-13-10181

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant
State Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Chutich, Judge; and Hooten,
Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appealing from his conviction of felony theft of a motor vehicle, appellant
SerShawn Nicholson challenges the district court's interpretation of Minnesota Statutes

section 609.52, subdivision 2(a)(17) (2014). Nicholson argues that the word "takes" should be defined to require that a person convicted under the statute had possession or control of the vehicle, which he contends that he did not have. He asserts that once the statute is interpreted properly, the evidence is not sufficient to support his conviction. Because we find that the word "takes" may be interpreted broadly enough to cover conduct that deprives an owner of possession, we affirm his conviction.

**FACTS**

On August 24, 2012, Nicholson rented a car from National Car Rental. The original rental period expired on August 27, but Nicholson extended it through August 31. Nicholson did not return the car at the end of the rental agreement, and National attempted to contact him. In September, National sent Nicholson a demand letter through certified mail, but it was returned to sender. National attempted to call numerous times but never reached Nicholson. The calls were occasionally answered, but never by anyone willing to identify themselves; most of the attempted calls were met with silence or, on one occasion, "a higher-pitched giggle."

National eventually reported the car stolen, at which point it was able to activate the car's OnStar locating system. On October 18, 2012, OnStar notified police that it had located the car in a Minneapolis parking ramp. Soon after, a Minneapolis-Saint Paul Airport Police detective called Nicholson to interview him about the car. The detective recorded the interview, which was later entered into evidence by the state.

When asked about the car, Nicholson gave several explanations for failing to return it: he claimed that he had been in a coma for a month and a half, that he had given

2

the car to a woman who agreed to return the car for him, and that he was paying for the rental the whole time. On those facts, the state charged Nicholson with one count of felony theft of a motor vehicle. *See* Minn. Stat. § 609.52, subd. 2(a)(17).

The parties proceeded to a court trial. At the close of the state's case, Nicholson moved for an acquittal. He contended that the state had not produced any evidence that he drove the car after the lease expired. Nicholson then argued that no reasonable inference supported an essential element of the crime: that he took or drove the car while knowing he did not have consent to do so. The state responded that Nicholson was in possession of the car after August 31 and argued that "keeping what you are no longer entitled to keep is a taking" under the statute. The district court denied Nicholson's motion.

Nicholson did not testify and did not offer any evidence to support his claims that he had been in the hospital and that a woman had agreed to return the car for him. Nicholson called two witnesses. The first, an airport police officer who recovered the car, testified that the car was abandoned in a downtown Minneapolis parking garage. The second, a National customer service representative, testified that she called Nicholson many times at two different numbers and was frequently hung up on by people who did not identify themselves. At the close of trial, the district court convicted Nicholson of felony theft of a motor vehicle. Nicholson appeals.

## DECISION

On appeal, Nicholson's argument is two-fold. He argues that the district court erred in interpreting the statute not to require the state to prove that he took or drove the

3

car without consent from the owner. Once the statute is interpreted correctly, Nicholson asserts, the evidence is insufficient to support his conviction. His arguments are unpersuasive.

## I.    Statutory Interpretation of "Takes"

Whether a statute has been properly construed is a question of law subject to de novo review. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn. 1996). "[W]ords and phrases are construed according to rules of grammar and according to their common and approved usage" unless they have a technical or acquired special meaning. Minn. Stat. § 645.08 (1) (2014). For evidence of common and approved usage, we turn to dictionary definitions. *See State v. Hartmann*, 700 N.W.2d 449, 453-54 (Minn. 2005) (consulting three dictionaries to determine whether a contested term had a well-defined and clear meaning).

Minnesota Statutes section 609.52, subdivision 2(a)(17) provides that whoever "takes or drives a motor vehicle without the consent of the owner or an authorized agent of the owner, knowing or having reason to know that the owner or an authorized agent of the owner did not give consent" commits theft. Minn. Stat. § 609.52, subd. 2(a)(17). Nicholson contends that if the first element—that he took or drove a motor vehicle—is interpreted properly, then the state failed to prove it beyond a reasonable doubt.

Neither "takes" nor "drives" is defined by the relevant statute, so we look for evidence of their common usage. *See* Minn. Stat. § 645.08(1). The parties do not dispute the word "drive" but cite diverging definitions of the word "take." Nicholson suggests the definition "[t]o get into one's hands, control, or possession." *The American Heritage*

4

*Dictionary* 1774 (5th ed. 2011). He asserts that if he did not possess the car after the lease expired, then he could not have taken it. The state, by contrast, points to definitions of "take" and "taking" in the fourth edition of Black's Law Dictionary. The state asserts that "taking" implies "a transfer of possession, dominion, or control," and that "takes" should be defined as "to deprive one of the use or possession of." *See Black's Law Dictionary* 1625-26 (4th ed. 1968).

Each party suggests a simple definition, but the word "take" is fairly complicated. The Compact Oxford English Dictionary, for example, devotes approximately 16 pages to the word's various definitions and etymology. *Compact Oxford English Dictionary* 557–73 (2d ed. 1991). The ninth edition of Black's Law Dictionary uses approximately two pages to define "take" in various contexts, but the first definition listed is "[t]o obtain possession or control, whether legally or illegally." *Black's Law Dictionary* 1590–92 (9th ed. 2009). The definition of "taking," however, includes a criminal- and tort-law context with the following definition: "[t]he act of seizing an article, with or without removing it, but with an implicit transfer of possession or control." *Id.* at 1591. Under the criminal- and tort-law contexts, Black's Law Dictionary also defines "constructive taking" as "[a]n act that does not equal an actual appropriation of an article but that does show an intention to convert it, as when a person entrusted with the possession of goods starts using them contrary to the owner's instructions." *Id.*

The Minnesota Supreme Court has applied a broad definition of the word "taking," but in the context of governmental takings. The supreme court stated: "[i]t is well established that the government need not directly appropriate or physically invade

5

private property to effectuate a taking." *Wensmann Realty, Inc. v. City of Eagan*, 734 N.W.2d 623, 632 (Minn. 2007). Even government regulation of property can be a taking in limited circumstances. *Id.* This approach is consistent with the definition and explanation found in Garner's Dictionary of Legal Usage:

> Lawyers have long argued about just what constitutes a *taking*, but it is hard now to improve on a general statement of more than a century ago: "Anything may be said to amount to a *taking* [that] deprives the owner of the use, occupation, or enjoyment of his property."

*Garner's Dictionary of Legal Usage* 877 (3d ed. 2011) (defining taking).

After considering the relevant evidence of common usage, we agree with the state's interpretation of the statute. A broader definition of "takes" is consistent with common usage, legal dictionary definitions, and the supreme court's interpretation of the word in the context of governmental takings. Accordingly, "takes" describes conduct when a person deprives an owner of the use of their possession, even if the deprivation is caused by failing to return it rather than continuing to use it.

## II. Sufficiency of the Evidence

When reviewing the sufficiency of the evidence supporting a conviction, this court's review is limited to a thorough analysis of the record to "determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the [fact-finder] to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). This court reviews a sufficiency-of-the-evidence claim by determining whether legitimate inferences drawn from the record evidence would allow a

6

fact-finder to conclude that the defendant was guilty beyond a reasonable doubt. *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012).

We "assume that the [fact-finder] believed all of the state's witnesses and disbelieved any evidence to the contrary." *State v. Chambers*, 589 N.W.2d 466, 477 (Minn. 1999). This court "will not disturb the verdict if the [fact-finder], acting with due regard for the presumption of innocence" and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004) (quotations omitted). Reversal is appropriate, however, "if facts proving an essential element of the offense are left more to conjecture and speculation than to reasonable inference." *State v. DeRosier*, 695 N.W.2d 97, 108 (Minn. 2005).

Here, the district court concluded that Nicholson's conduct satisfied all four elements of felony theft of a motor vehicle, including that he took or drove a motor vehicle. The district court made, among others, the following findings of fact: (1) the original rental agreement ended on August 27, 2012; (2) Nicholson extended the contract until August 31, 2012; (3) the car was not returned at the end of the extended contract period; (4) National unsuccessfully tried to contact Nicholson numerous times at telephone numbers that he provided; (5) National reported the car stolen; and (6) the police found the car abandoned in a parking ramp. These findings are based on the record and are not clearly erroneous. The district court also disbelieved Nicholson's explanation that he had been in a coma for a month and a half and that he had given the

car to a friend who promised to return it. We give great deference to a district court's credibility findings. *State v. Doren*, 654 N.W.2d 137, 141 (Minn. App. 2002).

Because the word "takes" includes conduct broad enough to encompass actions that deprive owners of their property, and Nicholson deprived National of its property by failing to return the car, the district court did not err in finding that Nicholson took or drove the car in violation of Minnesota Statutes section 609.52, subdivision 2(a)(17). Accordingly, sufficient evidence in the record supports Nicholson's conviction of felony theft of a motor vehicle.

**Affirmed**